# No. 19-35460
# (Consolidated with Nos. 19-35461 and 19-35462)

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

LEAGUE OF CONSERVATION VOTERS, *et al.*,

*Plaintiffs-Appellees,*

v.

JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*,

*Defendants-Appellants.*

---

On Appeal from the U.S. District Court for the District of Alaska
No. 3:17-cv-00101 (Hon. Sharon L. Gleason)

---

# SUPPLEMENTAL BRIEF FOR PLAINTIFFS-APPELLEES
# LEAGUE OF CONSERVATION VOTERS, ET AL.

---

Erik Grafe
Earthjustice
441 West 5th Avenue, Suite 301
Anchorage, AK 99501
T: 907.792.7102
E: egrafe@earthjustice.org

Eric P. Jorgensen
Earthjustice
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: ejorgensen@earthjustice.org

Nathaniel S.W. Lawrence
Natural Resources Defense Council
3723 Holiday Drive, SE
Olympia, WA 98501
T: 360.534.9900
E: nlawrence@nrdc.org

Katherine Desormeau
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
T: 415.875.6100
E: kdesormeau@nrdc.org

*Counsel for Plaintiffs-Appellees*
*League of Conservation Voters*, *et al.*

*Additional counsel for Plaintiffs-Appellees League of Conservation Voters, et al.*:

Nancy S. Marks
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, NY 10011
T: 212.727.2700
E: nmarks@nrdc.org

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................2

I.      Because the Arctic and Atlantic withdrawals will remain in force regardless of the outcome of these appeals, the appeals are moot............................................................2

      A.      Section 7 of the Biden Order moots the appeals. ...............................................................................2

      B.      Section 4 of the Biden Order does not alter the mootness analysis. ...................................................4

II.     No exception to mootness applies. ................................................6

CONCLUSION .......................................................................................................9

CERTIFICATE OF COMPLIANCE ...................................................................10

ADDENDUM ........................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019) ................................................................. 8

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
    941 F.3d 1195 (9th Cir. 2019) (en banc) .................................................. 8

*Calderon v. Moore*,
    518 U.S. 149 (1996) (per curiam) ......................................................... 1, 3

*Fikre v. FBI*,
    904 F.3d 1033 (9th Cir. 2018) ........................................................ 1, 6, 9

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ............................................................................. 7-8

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) (en banc) .................................................. 7

## Statutes and Regulations

43 U.S.C. § 1341(a) ............................................................................... 3, 4

## Executive Orders

Executive Order No. 13,795, 82 Fed. Reg. 20815
    (Apr. 28, 2017) ("Trump Order") ..................................................... 1, 3, 4

Executive Order No. 13,990, 86 Fed. Reg. 7037
    (Jan. 20, 2021) ("Biden Order") ............................................ 1, 2-3, 4, 5, 6, 7

Executive Order No. 14,008, 86 Fed. Reg. 7619
    (Jan. 27, 2021) ....................................................................................... 7

## Other Authorities

White House, Blog: President Obama Protects
    Untouched Marine Wilderness in Alaska
    (Jan. 27, 2015) ....................................................................................... 5

## INTRODUCTION

On January 20, 2021, President Biden issued Executive Order No. 13,990, "Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis," 86 Fed. Reg. 7037 (Jan. 20, 2021) ("Biden Order"). As explained below, the Biden Order revoked President Trump's Executive Order No. 13,795, 82 Fed. Reg. 20815 (Apr. 28, 2017) (2-ER-285) ("Trump Order"), Section 5 of which is at issue in these appeals. President Biden's Order ensures that President Obama's three Arctic and Atlantic withdrawals—the subject of this litigation—will remain in force regardless of the outcome of these appeals. Because of this, a merits ruling would no longer grant Appellants any effectual relief. Additionally, because the Biden Order is an "unambiguous renunciation" of the Trump Order, the voluntary cessation doctrine does not apply. *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018). As a result, the appeals must be dismissed as moot. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) ("[A]n appeal should . . . be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." (quotation marks omitted)).

# ARGUMENT

**I. Because the Arctic and Atlantic withdrawals will remain in force regardless of the outcome of these appeals, the appeals are moot.**

**A. Section 7 of the Biden Order moots the appeals.**

These appeals turn on a single merits question: whether Section 5 of the Trump Order—which purported to abolish President Obama's 2015 Arctic Withdrawal (2-ER-296), 2016 Arctic Withdrawal (2-ER-289), and 2016 Atlantic Withdrawal (2-ER-290), and reopen all three areas to mineral disposition—was constitutionally or statutorily authorized. Appellees ("the League"), whose members use and enjoy these withdrawn areas and whose interests would be injured by seismic and other activities there, challenged Section 5 of the Trump Order. The district court below vacated Section 5 of the Trump Order as beyond the president's constitutional and statutory authority and found that, "[a]s a result, the previous three withdrawals . . . will remain in full force and effect unless and until revoked by Congress." 1-ER-30.

Appellants sought this Court's reversal of the district court's decision and, in essence, reinstatement of Section 5 of the Trump Order. On his first day in office, however, President Biden issued an executive order revoking several of his predecessor's executive orders, including all of the Trump Order at issue here. *See* Biden Order § 7(a), 86 Fed. Reg. at 7041 ("Executive Order 13795 of April 28,

2

2017 . . . [is] hereby revoked."). Now that President Biden has independently exercised his authority to revoke the Trump Order, there is nothing left for this Court to reinstate. Even if the Court were to agree with Appellants and reverse the district court on the merits, that would not revive the Trump Order. In short, the Arctic and Atlantic withdrawals are and will be in full force and effect regardless of the outcome of these appeals. Because the Court "cannot grant any effectual relief whatever in favor of the appellant[s]," these appeals should be dismissed as moot. *Calderon*, 518 U.S. at 150 (quotation marks omitted).[1]

To be clear, this conclusion—that Section 7 of the Biden Order moots these appeals—does not implicate the merits question in these appeals. That merits question turns on whether the President has authority to revoke withdrawals made under OCSLA Section 12(a), 43 U.S.C. § 1341(a), and reopen withdrawn lands to disposition. The Biden Order revoked various executive orders, but critically did not purport to revoke any *withdrawals*, for the simple reason that the Trump Order

---

[1] Separately, Section 4(c) of the Trump Order (2-ER-286) purported to revoke President Obama's 2016 Northern Bering Sea Withdrawal (2-ER-291). In this litigation, the League challenged only Section 5 of the Trump Order based on its members' interests in the specific Arctic and Atlantic areas affected by that section. *See* 1-ER-8-9 & n.33. President Biden's decision to revoke the Trump Order in its entirety—including not only Section 5, but also Section 4(c)—means that the Northern Bering Sea Withdrawal is now back in force, too.

3

did not make any. The Trump Order did not "withdraw" any lands "from disposition," *id.*, but rather attempted—unlawfully, in the League's and the district court's view of Section 12(a) authority—to *undo* existing withdrawals and put those lands back in circulation. *See* 2-ER-286. President Biden's action does not implicate that same dispute.

In sum, by virtue of Section 7, all three Arctic and Atlantic withdrawals are and will be in effect regardless of the outcome of these appeals. These appeals are therefore moot.

### B. Section 4 of the Biden Order does not alter the mootness analysis.

The Biden Order separately mentions withdrawals in Section 4, emphasizing the significance of the two largest withdrawals in the Arctic region.

In Section 4—entitled "Arctic Refuge"—the Biden Order addresses two aspects of the new administration's efforts to protect the U.S. Arctic region from oil and gas development. Biden Order § 4, 86 Fed. Reg. at 7039. First, Subsection (a) directs the Interior Secretary to place a "temporary moratorium" on onshore oil and gas leasing activities in the Arctic National Wildlife Refuge. *Id.* § 4(a). Relatedly, Subsection (c) authorizes the Attorney General to take action with regards to litigation over those activities. *Id.* § 4(c). Second, Subsection (b) invokes the President's authority under OCSLA Section 12(a) assertedly to

4

"reinstate[]" President Obama's 2016 Arctic Withdrawal and his 2016 Northern Bering Sea Withdrawal. *Id*. § 4(b).

Consistent with Section 4's overall focus on select climate-related protections in the Arctic, Subsection 4(b) serves to highlight the two largest withdrawals in the Arctic region—which together protect roughly 141 million acres[2]—because of their special importance to the incoming administration's climate strategy. By reaffirming these withdrawals by name, the President underscored two centerpieces of his administration's commitment to "bolster resilience to the impacts of climate change" and "restore and expand our national treasures." Biden Order § 1, 86 Fed. Reg. at 7037. Subsection 4(b) does not, however, indicate any intent to cast doubt *sub silentio* on the status of the smaller Arctic and Atlantic withdrawals not mentioned, or otherwise alter the comprehensive effect of Section 7. With or without Subsection 4(b), Section 7 of the Biden Order eliminates the Trump Order and definitively ensures that all three

---

[2] The 2016 Arctic Withdrawal (2-ER-289) protected roughly 115 million acres—including most of the U.S. Beaufort Sea (minus 2.8 million nearshore acres) and all of the U.S. Chukchi Sea that had not already been withdrawn in 2015 (roughly 9.8 million acres). *See* 1-LeagueSER-1-2; *see also* White House, Blog: President Obama Protects Untouched Marine Wilderness in Alaska (Jan. 27, 2015), https://bit.ly/3r7RiRb (describing 2015 Arctic Withdrawal). The Northern Bering Sea Withdrawal (2-ER-291) protected "40,300 square miles," or nearly 26 million acres, of the nearby Bering Sea. 1-LeagueSER-8.

Obama-era withdrawals at issue in this litigation would remain in effect even if Appellants prevailed here, making these appeals moot.

## II. No exception to mootness applies.

The voluntary cessation doctrine does not apply here. When evaluating whether voluntary governmental action moots an appeal, this Court considers the "form" of the action, the Government's "avowed rationale," and any "procedural safeguards insulating the new state of affairs from arbitrary reversal," and looks for the "government's unambiguous renunciation of its past actions" in the absence of such safeguards. *Fikre*, 904 F.3d at 1038-39 (quotation marks omitted). Here, far from making "an individualized determination untethered to any explanation or change in policy," *id.* at 1039-40, President Biden implemented an "abiding change in policy," *id.* at 1040, using the official and highly public form of an executive order that completely rejected his predecessor's action at issue here.

The rationale animating President Biden's Order is a long-term policy goal: an "abiding commitment" to "protect" and "conserve" the environment from the intractable threat of climate change. Biden Order § 1, 86 Fed. Reg. at 7037; *see also id.* (declaring it "the policy of my Administration . . . to bolster resilience to the impacts of climate change" and "to restore and expand our national treasures"). And each of the three withdrawals that President Biden's Order reaffirmed were,

6

themselves, justified by long-term conservation and climate goals and the interests of future generations. *See* 2-ER-290 (withdrawal will "ensure" that "unique resources" will "remain available for future generations," protected from "any future mineral leasing"); 2-ER-296 (similar); 2-ER-289 (describing "important, irreplaceable values" to be safeguarded).

Further, President Biden's order did not attempt to impose time limits or expiration dates on the withdrawals, and it gave no other indication that they were potentially short-lived or ephemeral. Consider, for comparison's sake, Section 4(a) of the Biden Order, which imposed an expressly "temporary" moratorium on implementing the oil and gas leasing program in the Arctic National Wildlife Refuge. Biden Order § 4(a), 86 Fed. Reg. at 7039; *cf. Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1019 (9th Cir. 2012) (en banc) (agency moratorium on challenged mining activities did not moot case where moratorium was "only temporary").[3]

---

[3] Similarly, one week later, President Biden issued an order directing his Interior Secretary to "pause" mineral leasing on public lands and in offshore areas "pending completion of a comprehensive review and reconsideration" of federal leasing practices. Executive Order No. 14,008 § 208, 86 Fed. Reg. 7619, 7624 (Jan. 27, 2021). In so doing, the President relied not on his withdrawal authority under Section 12(a), but on his general supervisory authority under "the Constitution and the laws of the United States of America." *Id.* at 7619; *see Franklin v. Massachusetts*, 505 U.S. 788, 798 n.1 (1992) ("[T]he President may be

Of course, as all parties agree, Congress could someday terminate the withdrawals and reopen these lands to disposition. But the mere possibility of legislative reversal generally cannot overcome mootness. *See Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc). The possible exercise of Congress's power is, moreover, particularly irrelevant to mootness in a case about presidential power because it would present "a substantially different controversy." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). And while the parties have disagreed on whether these withdrawals could ever be made available for leasing again by *executive* action alone, the Court has no occasion to reach that merits question to resolve the threshold mootness issue here. That is because—even if Appellants were correct that the President could undo Section 12(a) withdrawals—nothing found in the Biden Order, the underlying withdrawal memoranda, or anywhere else suggests that the President will attempt to reopen these lands to leasing in the future. On the contrary, there is every indication that the President has unambiguously renounced the Trump Order and intends these withdrawals to

---

involved in the policymaking tasks of his Cabinet members, whether or not his involvement is explicitly required by statute."). Again, this "pause"—unlike the withdrawals at issue here—is expressly temporary, with its expiration tied to a future event.

8

remain intact for the long term. *See Fikre*, 904 F.3d at 1039. The appeals are therefore moot.

## CONCLUSION

For the foregoing reasons, the appeals should be dismissed as moot.

March 15, 2021                                     Respectfully submitted,

<table>
<tr><td></td><td><u>/s/ N.S.W. Lawrence</u></td></tr>
<tr><td>Erik Grafe<br>Earthjustice<br>441 West 5th Avenue, Suite 301<br>Anchorage, AK 99501<br>T: 907.792.7102<br>E: egrafe@earthjustice.org</td><td>Nathaniel S.W. Lawrence<br>Natural Resources Defense Council<br>3723 Holiday Drive, SE<br>Olympia, WA 98501<br>T: 360.534.9900<br>E: nlawrence@nrdc.org</td></tr>
<tr><td>Eric P. Jorgensen<br>Earthjustice<br>325 Fourth Street<br>Juneau, AK 99801<br>T: 907.586.2751<br>E: ejorgensen@earthjustice.org</td><td>Katherine Desormeau<br>Natural Resources Defense Council<br>111 Sutter Street, 21st Floor<br>San Francisco, CA 94104<br>T: 415.875.6100<br>E: kdesormeau@nrdc.org</td></tr>
<tr><td>Nancy S. Marks<br>Natural Resources Defense Council<br>40 West 20th Street, 11th Floor<br>New York, NY 10011<br>T: 212.727.2700<br>E: nmarks@nrdc.org</td><td>*Counsel for Plaintiffs-Appellees*</td></tr>
</table>

## CERTIFICATE OF COMPLIANCE

I certify that this supplemental brief complies with the ten-page length limit set by the Court's Order dated January 27, 2021.


March 15, 2021                      */s/ N.S.W. Lawrence*
                                                   Nathaniel S.W. Lawrence

## ADDENDUM

All applicable statutes, etc., are contained in the principal briefs and addenda of the Federal Appellants and the League, and attached to the Federal Appellants' Rule 28(j) letter of January 22, 2021.